IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALERIE LEE BLON )
) No. 15-215
v.

CAROLYN W. COLVIN

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for supplemental social security income, based on allegations of mental and physical impairments, with a date of onset of September 19, 2011. Plaintiff's claim was denied initially and upon hearing before an administrative law judge ("ALJ"). The Appeals Council denied her request for review, and this appeal followed. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied.

**OPINION**

**I.    STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's

1

findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II.  THE PARTIES' MOTIONS

### A. MEDICAL OPINION

Plaintiff argues that the ALJ erred in rejecting the treating opinion of her psychiatrist, Dr. Cassone, and instead crediting the opinions of two non-examining state agency consultants, Drs. Rohan and Schiller. Neither Dr. Rohan nor Dr. Schiller reviewed Dr. Cassone's opinion.

It is axiomatic, in this context, that the opinion of a treating physician is ordinarily entitled to great weight. Likewise, an examining source is generally entitled to more weight than a non-examining source. Thompkins v. Colvin, 2016 U.S. Dist. LEXIS 33147, at *5 (W.D. Pa. Mar. 15, 2016). Nevertheless, when a treating physician's notes, analyzed as a whole, contradict the physician's opinion on a claimant's ability to work, an ALJ may properly rely on those notes in determining that the opinion is entitled to little or no weight. McCall v. Colvin, 2015 U.S.

2

Dist. LEXIS 171349 (E.D. Pa. Dec. 21, 2015). "If a treating physician's opinion is rejected, the ALJ must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, [and] any specialization of the opining physician …." Sanchez v. Barnhart, 388 F.Supp. 2d 405, 412 (D. Del.2005).

Here, Dr. Cassone explained that his opinions regarding serious limitations on Plaintiff's abilities to do unskilled work were based on mood swings, recurrent panic attacks, and poor stress tolerance. With respect to restrictions noted on Plaintiff's ability to do semiskilled and skilled work, he explained:

> long history of bipolar disorder
> Panic attacks poor stress tolerance
> In treatment years before I saw her first __ medications [followed by list of medications including Zoloft, lithium, and klonopin]
> Suggest obtain records from Indiana Guidance [?] Center also

And further, with respect to restrictions on the ability to do particular types of jobs, Dr. Cassone explained:

> Long history of [illegible]
> Borderline personality structures
> Panic attacks under stress
> Mood swings

The ALJ assigned weight to Dr. Cassone's opinions, commensurate with the degree of limitation opined to. First, she gave "great weight" to the opinion that Plaintiff had no limitations in her ability to understand, remember, and carry out simple instructions, ask simple questions, and remember work procedures, because this opinion was consistent with Dr. Cassone's progress notes, Plaintiff's activities of daily living, and GAF scores. Second, the ALJ gave "lesser weight" to the opinion that Plaintiff had a substantial loss of ability to maintain regular

3

attendance and an ordinary work routine, work in proximity to others, complete a normal work day/work week, and accept instruction and criticism from supervisors. Lesser weight was given, because the opinion was based predominantly on Plaintiff's subjective complaints, inconsistent with GAF scores "or other substantial evidence of record," and not well supported by clinical and objective findings. Finally, the ALJ gave the "least weight" to the opinion that Plaintiff had no ability to get along with co-workers, deal with normal work stress, and interact appropriately with the public. The ALJ explained that those portions of Dr. Cassone's opinion were inconsistent with Plaintiff's "consistent high" GAF scores, or Plaintiff's activities of daily living.

An arguably disquieting pattern emerges in the ALJ's consideration of Dr. Cassone's treatment notes. The ALJ states that in February, 2012, Plaintiff was "doing well, had stable moods." It is true that on February 28, 2012, Plaintiff reported stabilized moods to a counselor at Dr. Cassone's facility; this is the note to which the ALJ refers. A report from the same counselor on February 12, 2012, however, states that Plaintiff reported experiencing three different personalities, and that she has been in and out of psychotherapy since puberty. The ALJ does not refer to the February 12 note. Then, the ALJ refers to a May 21, 2012 note stating that Plaintiff was feeling good after her psychiatric hospitalization; in Dr. Cassone's notes of May 10, 2012, to which the ALJ does not refer, he said that Plaintiff had an "obvious manic episode with continued hypomania and panic attacks," for which she ended up hospitalized.

The pattern continues: the ALJ refers to a note dated June 11, 2012, which reflects Plaintiff's report of feeling good, more confident, and willing to socialize. The ALJ does not, however, refer to a June 1, 2012 note that reports Plaintiff feeling depressed, with racing thoughts. In sum, it appears that the ALJ accepted and isolated progress notes that supported "no limitations," and failed to address those that supported the portions of Dr. Cassone's opinion that

4

the ALJ rejected.  "A district court reviewing an ALJ's decision 'needs from the ALJ not only an expression of the evidence he considered which supports the result, but also some indication of the evidence that was rejected.'" Marti v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 103951 (D.N.J. Aug. 6, 2015).  Moreover, "[a]n ALJ cannot rely only on the evidence that supports her opinion." Yurt v. Colvin, 758 F.3d 850, 859 (7th Cir. 2014).   It is not apparent, from the record, that the ALJ considered Dr. Cassone's records as a whole, or considered all pertinent factors, prior to assigning such little weight to portions of his opinion.

The ALJ gave the "least weight" to Dr. Cassone's opinion that Plaintiff had no ability to get along with co-workers, deal with normal work stress, or interact appropriately with the public.  As mentioned supra, she found the opinions inconsistent with Plaintiff's "consistent high" GAF scores and activities of daily living.  The ALJ pointed to a November, 2011 GAF of 70, assigned by Dr. Cassone; other scores in the range of 55-61, and her May, 2012 GAF of 60. The GAF scores of record, however, are not consistently high, as Plaintiff received GAF scores of 20, 25, and 40 in relation to her psychiatric hospitalization between April 10 and 13, 2012. While GAF scores are appropriate evidence to consider, they are only snapshots.  "Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." Kroh v. Colvin, 2014 U.S. Dist. LEXIS 122900, at *53 (M.D. Pa. Sept. 4, 2014) (quoting Lane v. Colvin, No. C13-5658, 2014 U.S. Dist. LEXIS 65259 (W.D. Wash. May 12, 2014).  While the failure to address Plaintiff's low GAF scores alone would not be cause for remand, because I remand on other grounds, the ALJ may reconsider the entirety of Plaintiff's GAF scores at that time.  See, e.g., Logan v. Colvin, 2015 U.S. Dist. LEXIS 130994 (D.N.J. Sept. 29, 2015).

Moreover, the Plaintiff's activities of daily living relied on were as follows: living in a house with her husband, caring independently for her personal needs, care for her dog, various activities within the house (such as watching television and washing dishes), driving, and shopping at Wal-Mart with her husband a couple of times a week. The ALJ failed to explain how these activities, all primarily in-home and none of which recognizably bear on the ability to interact with others, are inconsistent with Dr. Cassone's opinion that Plaintiff cannot get along with the public or co-workers, or deal with normal work stress.[1] Under all of the circumstances, it is incumbent upon the ALJ to further explain her reasoning. Carlton v. Colvin, 2015 U.S. Dist. LEXIS 170355 (C.D. Cal. Dec. 18, 2015).

**B. HALLEX**

Plaintiff also contends that the ALJ violated HALLEX I-2-8-25 by referring to the American Psychiatric Diagnostic Manual of Mental Disorders ("DSM"), without making the DSM part of the record. HALLEX states that an ALJ may not cite medical publications as the authority for resolving any issue, but if he must, the material must be submitted to claimant for review and made part of the record. HALLEX I-2-8-25(D). An ALJ may refer to medical texts or publications, such as the DSM, for limited purposes, such as defining terms; he may not, however, use them for substantive evidence if not made part of the record. Prince v. Colvin, 2015 U.S. Dist. LEXIS 10547, at **15-18 (W.D. Wis. Jan. 29, 2015). In this case, the ALJ clearly referred to the DSM as a way of explaining the Global Assessment of Functioning ("GAF") scale. The DSM was not used to resolve an issue in the case.

As another Court has noted, "Plaintiff was represented by counsel at both the administrative and appellate levels, who, in their practice of Social Security Disability law,

---

[1] Elswhere in her decision, the ALJ observed that Plaintiff reported getting along with authority figures only under certain circumstances, and avoided crowds because she became angry and had panic attacks, and that she only goes shopping with someone else present.

6

should be inherently aware of or have access to the GAF Scale," and such action by the ALJ is not grounds for remand. Peterson v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 126573 ( E.D. Mich. Aug. 7, 2015); see also Atwood v. Comm'r, 2013 U.S. Dist. LEXIS 119025 (D. Md. Aug. 21, 2013) . Plaintiff does not explain how the ALJ's reference to the DSM caused her prejudice. Accordingly, I find no fatal error in this regard.

### C. "PRIOR FILE" DOCUMENTS

Plaintiff contends that the ALJ failed to address "Prior File" documents, in the record as exhibits 1F-18F, and that this omission constitutes error. Plaintiff asserts that the ALJ erred when he did not address inpatient hospital records from April 10, 2012 through April 13, 2012, 21-22F, which were included in the "prior file" documents. Plaintiff acknowledges that some of those documents relate to a period prior to the time pertinent to the application for benefits. As regards the others, Plaintiff points out that the ALJ relied on the opinion of Dr. John Rohar, a state agency consultant, which in turn relied on the disregarded documents. As Defendant points out, however, the ALJ referred to that hospitalization at the third step of the sequential process, and elsewhere. Because I remand this matter on other grounds, that remand may include additional assessment of additional "Prior File" documents, as warranted.

### CONCLUSION

In sum, this matter must be remanded for further explanation or consideration in accordance with the foregoing Opinion. Plaintiff's Motion will be granted, and Defendant's denied. An appropriate Order follows.

**ORDER**

AND NOW, this 20th day of May, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is granted, and Defendant's denied. This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court